to have the omission rectified in the lower court.

In State v. Whitesides, 49 La. Ann. 256, 21 South. 541, we said (citing a number of authorities): "The rule is stringent that the defendant, if he does not interrogate as to the qualifications of a juror, cannot take advantage of the want of necessary qualifications after verdict. If the juror answers falsely, and this fact is ascertained for the first time after verdict, this disqualification may be urged as ground for a new trial."

See, also, State v. Thomas, 35 La. Ann. 24; State v. Sopher, 35 La. Ann. 975; State v. Button, 50 La. Ann. 1072, 23 South. 868, 69 Am. St. Rep. 470; State v. Harper, 51 La. Ann. 164, 24 South. 796.

Finding no ground for reversal, the judgment appealed from is hereby affirmed.

———

(34 South. 108.)

No. 14,584.

STEPHENS v. ATKINS BROS.*

(March 2, 1903.)

SUCCESSION—UNLAWFULLY TAKING POSSESSION—ACCOUNTING.

1. One who takes possession of the property of a succession without legal authority will be held to account for the same or for its value.

(Syllabus by the Court.)

Appeal from Judicial District Court, Parish of Red River; Charles V. Porter, Judge.

Action by John F. Stephens, curator, against Atkins Bros. Judgment for plaintiff. Defendants appeal. Modified.

Alexander & Wilkinson and Wilkinson & Carter, for appellants. Egan, Scheen & Stephens and E. H. Carter (Pierson & Pierson, of counsel), for appellee.

MONROE, J. Plaintiff, as curator of the succession of S. A. Gardiner, alleges that his decedent died in November, 1900, leaving a cotton crop, together with corn, mules, horses, cattle, implements, etc., of the aggregate value of $3,400; that Atkins Bros., composed of

———

*Rehearing denied April 13, 1903.

John B. and James W. Atkins, took possession of said property and converted it to their own use; and he prays judgment against them in solido therefor, or, in the alternative, that they be condemned in the amount stated. The defendants deny that Gardiner left any property, and aver that, on the contrary, he was a bankrupt, and left no assets whatever.

There was judgment for plaintiff for $3,-129.36, with certain reservations in behalf of the defendants, and the latter have appealed. It appears from the record that S. A. Gardiner had owned a farm of 223 acres in the parish of Red River, which had been sold under execution to Theophilus Blackman, and that Blackman in December, 1898, sold it to Atkins Bros. for $2,087.28, of which $317.28 is said to have been paid in cash, and for the balance, according to the recitals of the deed, the purchasers gave their notes, payable in one, two, and three years. Whether Gardiner was on the place while these changes of title were being effected does not appear, but he seems to have been there as early as 1899, and he remained until November, 1900, when he died, leaving one son, about 20 years old, another somewhat younger, and a minor daughter; the two sons, as we understand the testimony, being the issue of one marriage, and the daughter of another. The elder of the sons, named Harry, testifies that he was attending school, but was called home by reason of his father's ill health, took charge of the place some time before his death, and gathered and harvested the crop, which amounted to 58 bales of cotton, and, say, 150 bushels of corn; 52 bales of the cotton having been picked after his father's death. He also testifies that just after his father's death he applied to Mr. Lisso to assist him in case it should become necessary, telling him that he thought Atkins "was going to gobble up everything he had," and that he wanted to make an arrangement to get what was coming to him; but he further testifies that he was not then thoroughly informed in regard to the business, and, in substance, that he afterwards became satisfied that his father was merely employed by Atkins Bros., and was working for wages, consisting of the "net profits over and above the taxes, interest, and supply account"; the result being, according to his statement, that he took his father's place, and in July, 1901, received, without reference to the profits, which, according to the defendant's theory, were nil, two mules, valued at $225, and a lot of corn, whilst his minor brother and sister got nothing. The minor brother, Herbert, showing a disposition to complain of this treatment, was, after the institution of this suit, paid $150. There was, however, dissatisfaction in other quarters; and the present plaintiff filed a petition, alleging that Gardiner had died leaving property and debts, and praying to be appointed curator of his succession. In that proceeding Harry Gardiner intervened, opposing the application; and there also intervened Mrs. Elizabeth Carr, as tutrix for the minor Herbert, and D. L. Holley, undertutor for the minor Hattie (appearing because the interests of his ward conflicted with those of her tutor, Harry); and those interveners alleged that Gardiner had left property, all of which had been taken possession of by Atkins Bros., and that he had also left debts, and two minor children in necessitous circumstances. They further alleged that the petition for the appointment of the curator had been filed at their request, and they joined in the prayer thereof. And the petitioner was appointed curator, and thereafter brought this suit.

Shortly before Gardiner's death, Egan & Scheen, attorneys, wrote to the defendants, making inquiry as to his financial condition, and, after some delay, received the following response:

"Lake End, La., 12/11/00. We have your letter of the 8th. You state: 'We understand, and the evidence in our possession shows, that the land which he is now living on belongs to him.' We are at a loss to understand how you can get such evidence, as the land does not belong to S. A. Gardiner in any sense whatever. It has been two years since a settlement was made between Mr. Gardiner and ourselves, and he is due us $1,-250.00, rent on the property for the past two years. He is also due us a little over $1,900 on account, making something over $3,150 he is due us. Mr. Gardiner asked us at one time to give him an opportunity to redeem the land, which we consented to do, under certain conditions, which conditions he failed to comply with in any sense of the word and forfeited any right he may have had some

twelve months ago. If you feel disposed to take up this $3,150 due us for rent and supplies you can do so and we will turn over to you the crop on the place, which is something like twenty-five bales of cotton, out, and about the same amount in the field. Please understand that this $3,150 has nothing to do with the land as it is not included in this amount."

The position taken in this letter—that Gardiner was a tenant—finds support in the entries made by defendants in Gardiner's account, as kept in their books, which account is wholly irreconcilable with the theory now advanced—that he was an employé working for wages. We find in the record written contracts between Gardiner and the defendants for the sale of cotton and cotton seed at specified prices, and Gardiner's account on defendants' books shows that the products were received and the price placed to his credit, according to those contracts. We find Gardiner charged on the same account with: "Rent, for 99–1900, Gardiner Place, 125 acres, at $4 per acre, $1,000." We also find the same account charged with items of a purely personal character—such, for instance, as physician's bills, burial outfits and caskets, lodge dues, etc. In other words, save for certain entries, which appear to have been made for the purposes of this litigation, the account is such an account as might be kept between the lessor of a plantation and the lessee, to whom he is furnishing supplies, selling goods, and advancing money, with an agreement looking to reimbursement from the crop, but it is not such an account as would be kept between the owner of a plantation and his hired manager.

There are many other circumstances in the case, all pointing to the same conclusion, which would unnecessarily lengthen this opinion, should we comment on them. They, together with the facts which have been stated, convince us, as they did the judge a quo, that the relations between the defendants and the decedent were not those of employers and employé, but that the defendants were the lessors, and perhaps factors, of the decedent. The learned judge a quo has, as we infer, reached the amount expressed in the judgment rendered by him by adding together the following items, as credited to the decedent on defendants' books, to wit:

| 1900. | 12/16. | By Proceeds 20 B/C.. | $ | 824 | 00 |
| " | " | "      " 25 B/C.. | | 900 | 00 |
| " | " | "      " 4 B/C.. | | 211 | 77 |
| " | " | "      " C/Seed.. | | 150 | 00 |
| " | " | "      " C/Seed.. | | 120 | 00 |
| " | " | " 3 mules at $65.... | | 195 | 00 |
| " | " | Am'nt allowed for imp. on Gardiner's place.. | | 400 | 00 |
| " | " | Balance for'd from 1899 acc. ............... | | 318 | 59 |
| | | | | $3,129 | 36 |

With regard, however, to the two items of $400 and $318.59, respectively, they are not included in the prayer of the petition, and, we are of opinion, should be left for adjustment hereafter.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount thereof from $3,129.36 to $2,410.77, and by reserving to the plaintiff the right hereafter to make claim, on behalf of the succession of S. A. Gardiner, for improvements placed by the decedent on the property occupied by him at the time of his death, and for any balance which may otherwise be found to be due him or his succession, and not included in the items hereinbefore enumerated. And it is further ordered and decreed that, as thus amended, said judgment be affirmed; the costs of the appeal to be paid by the plaintiff and appellee.

BLANCHARD, J., concurs in the decree.