(104 So. 481)

No. 25058.

## Succession of HAWTHORNE.

(April 27, 1925.   Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Mortgages ⬤�top32(3)—Deed of sale given to secure one signing purchase price notes as comaker held to operate as a mortgage.**

Where another signed all purchase price notes as comaker with purchaser, and thereupon purchaser executed a deed of sale to secure comaker for what he might pay on property, such deed operated as a mortgage on the property in favor of comaker for all that he paid out on account thereof.

2. **Executors and administrators ⬤⟷365—Succession; administrator holding mortgage on succession property may purchase it at sale of effects of succession.**

An administrator holding mortgage on succession property has, under Rev. Civ. Code, art., 1146, as amended by Act No. 197 of 1912, the right as mortgage creditor to purchase mortgaged property at sale of effects of succession.

3. **Executors and administrators ⬤⟷365—Succession; administrator purchasing personal property of succession at sale, without having mortgage or vendor's lien thereon, must account for its full value.**

Where administrator, having neither mortgage nor vendor's lien on movable property of succession, purchased such property at sale thereof, under Rev. Civ. Code, art. 1146, as amended by Act No. 197 of 1912, such sale to administrator was null, and he must account for full value of such property.

4. **Executors and administrators ⬤⟷539—Succession; one taking possession of succession property before qualifying as administrator must account for net rental value thereof.**

Under Rev. Civ. Code, arts. 502, 503, one taking possession of succession property without authority before qualifying as administrator, is accountable for net rental value thereof.

5. **Executors and administrators ⬤⟷131—Succession; administrator liable for net rental value of property under his charge, where it could have been rented and he neglected to do so.**

An administrator is responsible for any loss sustained by estate by reason of his neglect, and is liable for net rental value of property under his charge, if it could have been rented and he neglected to do so, but under Rev. Civ. Code, arts. 501, 508, administrator is entitled to deduct his expenses for repairs and improvements during such time.

Appeal from Fifteenth Judicial District Court, Parish of Allen; Jerry Cline, Judge.

Final accounting of Louis Benson, administrator of the estate of Susie Hawthorne, deceased, to which John Burnham, tutor of minor heirs, filed an opposition. From a judgment homologating the account of the administrator, opponent appeals. Judgment rendered in favor of heirs and against administrator.

S. N. Young, of Lake Charles, for appellant.

Williams & Reed, of Oakdale, for appellee Benson.

ST. PAUL, J.   This matter involves an opposition to an administrator's account. Susie Hawthorne (widow) died intestate on October 14, 1918, leaving certain unpaid debts (of which, more hereafter) and an estate amounting to $4,324, composed of (1) three lots of ground in the town of Oakdale, unimproved, appraised at $450; (2) two lots of ground, with improvements, appraised at $3,000; (3) certain personal property consisting of furniture and fixtures, all appraised at $874.

I.

The three unimproved lots, hereinabove first mentioned, are still unsold and ready to be delivered (or have been delivered) to her three surviving minor children, to wit, Joe Hawthorne, Brice Hawthorne, and Florence Hawthorne; all herein represented by their tutor, John Burnham, who is the appellant here and opponent in the court below. Hence we are concerned no further with this property.

## II.

The two lots, with improvements, herein above secondly mentioned, were purchased by the deceased some few months before her death. It does not appear how much of the price, if any, was paid cash; but the credit portion, secured by mortgage thereon, amounted to $1,400. This was represented by 18 notes of $75 each, payable monthly, the first being due on October 12, 1918, and the last on March 12, 1920; which, together with one note of $50, payable April 12, 1920, made up the $1,400 aforesaid; all bearing interest at 8 per cent. from maturity.

One Louis Benson, at her request, signed all of said notes as comaker (joint and several); and thereupon the deceased executed a deed of sale by which she conveyed to him said property, the consideration recited being $1,700 cash. This purports, on its face, to be an outright sale, and no counterletter was given; but it is admitted that it was intended as *security* only.

## III.

The first note fell due two days before her death, and was paid by Benson, who thereafter paid all the other notes as they fell due. After her death he took charge of the property and remained in charge thereof until September 4, 1920, when it was sold as hereinafter said. He seems to have made no effort to rent same except for a small amount, and collected during those 22 months only $200 in rent. On February 17, 1920, he applied for the administration of the succession, and qualified as administrator thereof on June 4, 1920.

## IV.

On September 4, 1920, the two improved lots and all the movable (personal) property was ordered sold to pay the succession debts, and, there being no other bidder thereon, Benson, the administrator, adjudicated same to himself for two-thirds its appraised value.

[1-3] The *deed of sale* given to Benson by the deceased to secure him for what he might pay upon the property operated as a *mortgage* upon said property in favor of Benson for all that he had paid out on account thereof. Davis v. Kendall, 50 La. Ann. 1121, 24 So. 264; Rice-Stix Dry Goods Co. v. Saunders, 128 La. 82, 54 So. 479; Latiolais v. Breaux, 154 La. 1006, 98 So. 620, and authorities there gathered. Hence, Benson had the right as *mortgage creditor* to purchase the mortgaged property at the sale of the effects of the succession, even though he was himself the administrator thereof. Rev. Civ. Code, art. 1146, as amended by Act 197 of 1912. But as he had neither mortgage nor *vendor's lien* upon the movable (personal) property, the sale thereof to himself was null. R. C. C. art. 1146, ut supra. Hence he must account for its *full value*, which, in the absence of any other testimony, must be taken as the appraised value thereof, say $874. As to the real estate, the purchase being valid, he must account only for the price at which he bid it in, say $2,000, being two-thirds of its appraised value.

## V.

[4] As Benson was wholly without authority to take possession of the succession's property before qualifying as administrator thereof, he must be held accountable for the *net* rental value thereof; i. e., for the rent (less expenses) which the property brought, or should have brought, whilst in his possession. R. C. C. arts. 502, 503. One who takes possession of the property of a succession without legal authority will be held to account for the same or its value. Stephens v. Atkins, 110 La. 14, 34 So. 108.

[5] Likewise, Benson is liable for the same *net* rental value of the property whilst under his charge as administrator, if the property could have been rented and he neglected to do so. An administrator is responsible for

any loss sustained by the estate by reason of his neglect, or by his failure to exercise that degree of prudent care which he would have exercised in the management of his own affairs. Succession of Boudousquie, 9 Rob. 405; Succession of Noblet, 2 La. Ann. 281.

We find from the evidence that the property could, and should, have been rented for $60 per month (*net* above taxes) during the 22 months from November, 1918, to September, 1920, both inclusive, say $1,320.

On the other hand, Benson is entitled to deduct therefrom his expenses for repairs and improvements during that time. R. C. C. arts. 501, 508. And the evidence satisfies us that during that time he expended for necessary repairs and useful improvements on the property the sum of $375.

Deducting $375 from $1,320 leaves a balance of $945 which Benson must account for as the revenues which might and should have been derived from the property.

## VI.

Accordingly Benson should have charged himself as administrator with the following debit items viz.:

(1) Price of real estate purchased.............. $2,000
(2) Appraised value of movables................  874
(3) Net revenues from succession property.....  945

    Making total debits against administra-
    tor ..................................... $3,819

On the other hand, the evidence shows that he is entitled to credit for the following debts, due by the succession and paid by him, viz.:

(1) Mortgage indebtedness and interest...... $1,538 17
(2) Funeral expenses, $173.20; doctor's bills,
    $28; drugs, $4; meat and groceries,
    $58.50; lighting, $10.50; furniture bill,
    $44.80—say ..............................  319 00
(3) Taxes, $60; attorney's fees, $300; ad-
    ministrator's commission, $70; sun-
    dry other law charges, $70.80—say......  500 80

    Making total credits in favor of ad-
    ministrator ........................... $2,357 97

158 LA.—21

Deducting $2,357.97 from $3,819, leaves a net charge against the administrator, and balance in favor of the heirs, of $1,461.03, say $1,461.03. And his account must be amended and recast to accord with above.

### Decree.

The judgment appealed from is therefore set aside; and it is now ordered that the account herein filed by the administrator be amended and recast, so as to read as follows:

Total debits against administrator.......... $3,819 00
Total credits in favor of administrator..... 2,357 97

Balance against administrator and in favor
    of the heirs of the deceased................ $1,461 03

It is further ordered that there be judgment in favor of said heirs, and against said administrator, for the aforesaid sum of $1,-461.03, with legal interest from this date until paid; and that said administrator pay all costs of these proceedings.

### On Application for Rehearing.

PER CURIAM. The clause in the opinion reading "during the 22 months from November, 1918, to September, 1920, both inclusive," contains a clerical error, which, however, does not affect the result. The clause should read "during the 22 months from November, 1918, to *August*, 1920, both inclusive."

Rehearing refused.